UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES C. HOAG,

                  Petitioner,

-vs-                                    Case No.  8:06-cv-1623-T-24MAP

SECRETARY, DEPARTMENT OF
CORRECTIONS,

                  Respondent.

_____/

## ORDER

This cause is before the Court on Petitioner James C. Hoag's 28 U.S.C. § 2254 petition for writ of habeas corpus.  Hoag is proceeding on his amended petition (hereinafter "petition") (Doc. No. 11).  Hoag challenges his conviction and sentence entered by the Circuit Court for the Sixth Judicial Circuit, Pinellas County, Florida.  A review of the record demonstrates that, for the following reasons, the petition must be denied.

PROCEDURAL HISTORY

On March 27, 1996, Hoag was charged with one count of first degree murder of Patricia Hoag (his mother), in violation of Section 782.04(1)(a), Florida Statutes (1995), and one count of attempted first degree murder of Marvin Rhoads, in violation of Section 782.04(1)(a), Florida Statutes (1995) and Section 777.04, Florida Statutes (1995).  The events giving rise to these charges occurred on March 21, 1996, in Pinellas County, Florida.

On May 30, 1997, Hoag pled no contest to second degree murder and attempted second degree murder (as lesser-included offenses). (Exh. 021; V 1,  R 164-165).  The

state trial court sentenced Hoag to thirty-five years incarceration for second degree murder and thirty years incarceration for attempted second degree murder with the sentences running concurrently. (Exh. 021; V 1,  R 166-172).

On December 5, 2001, the state district court of appeal reversed Hoag's sentence under *Heggs v. State*, 759 So. 2d 620 (Fla. 2000).  *Hoag v. State*, 801 So. 2d 207 (Fla. 2d DCA 2001).  In the *Hoag* opinion, the state district court of appeal remanded the case for the state trial court either to sentence Hoag under the 1994 guidelines or, if the State did not agree to resentencing, to allow Hoag to withdraw his plea.  The mandate issued January 2, 2002.  The state trial court allowed Hoag to withdraw his plea. (Exh. 021, V1, R 10).

On January 25, 2002, the state trial court vacated Hoag's nolo contendere plea and the judgment and the sentence, and this case was set for a jury trial.  On October 2, 2002, Hoag filed a motion in limine seeking to exclude, among other items, all testimony from Dr. Noel Palma regarding Patricia Hoag's autopsy that another medical examiner, Dr. Joan Wood, had conducted more than six years before.  On October 7, 2002, the state trial court denied the motion in limine after a hearing.

On October 8-11, 2002, a jury trial was held.  At the conclusion of the trial, the jury found Hoag guilty of one count of second degree murder and one count of attempted second degree murder (as lesser-included offenses). (Exh. 021; V 1, R 88-89)  The state trial court sentenced Hoag to 28 years and 1 month incarceration on both counts with the

sentences running concurrently.[1]  On October 21, 2002, Hoag filed a motion for new trial.

On November 15, 2002, the state trial court denied the motion after a hearing.

On November 19, 2002, Hoag filed a timely notice of appeal, raising the following

issue:

> DID THE TRIAL COURT ERR BY ALLOWING DR. PALMA'S HEARSAY TESTIMONY REGARDING THE MANNER AND CAUSE OF PATRICIA HOAG'S DEATH BASED EXCLUSIVELY UPON HIS REVIEW OF DR. WOOD'S AUTOPSY REPORT, PHOTOGRAPHS AND DEPOSITION WHEN DR. WOOD WAS AVAILABLE TO TESTIFY?

(Exh. 002).  On January 23, 2004, the state district court of appeal per curiam affirmed the

conviction and sentence.  *Hoag v. State*, 871 So. 2d 224 (Fla. 2d DCA 2004)(table). (Exh.

004).

On or about June 30, 2004, Hoag filed a state petition for writ of habeas corpus

alleging ineffective assistance of appellate counsel. (Exh. 006). On July 27, 2004,  Hoag

filed a supplemental petition. (Exh. 007).  On November 4, 2004, the state district court of

appeal denied the petition. (Exh. 009). On November 15, 2004, Hoag filed a motion for

rehearing and/or motion for rehearing en banc. (Exh. 010). The state district court of appeal

denied his motion on December 30, 2004. (Exh. 011).

On March 7, 2005, Hoag filed a Rule 3.850 Motion for Postconviction Relief, raising

the following grounds:

> 1. *BRADY* VIOLATION; DEFENDANT'S CONVICTION WAS OBTAINED UNCONSTITUTIONALLY BY THE FAILURE OF THE PROSECUTOR TO DISCLOSE EXCULPATORY AND/OR EVIDENCE THAT COULD HAVE

---

[1] On May 14, 2003, Hoag filed a Rule 3.800(b)(2) motion to correct a sentencing error.  On June 18, 2003, the state trial court granted the motion in a written order.  On July 18, 2003, the state trial court sentenced Hoag to fifteen years incarceration for the attempted second degree murder of Marvin Rhoads. The sentence runs concurrent to Hoag's sentence for the second degree murder of Patricia Hoag.

BEEN USED FOR IMPEACHMENT, i.e., THE F.D.L.E. DNA TEST RESULTS AND THUS VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS, EQUAL PROTECTION AND THE RIGHT TO A FUNDAMENTALLY FAIR TRIAL.

2. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT TO AND MOVE FOR MISTRIAL WHEN THE STATE REMOVED AND ALTERED EVIDENCE, i.e., THE AUDIOTAPE OF THE 911 PHONE CALL AND THUS VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS, EQUAL PROTECTION, EFFECTIVE ASSISTANCE OF COUNSEL, AND THE RIGHT TO A FULL AND FAIR TRIAL.

3. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO CALL DEFENSE WITNESSES, JOHN HOAG AND CATHY SOUTHERLAND, WHO WOULD HAVE TESTIFIED THAT MRS. HOAG WAS DOWNSTAIRS WHEN MR. RHOADS ARRIVED HOME AND THUS VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS, EQUAL PROTECTION AND THE RIGHT TO A FUNDAMENTALLY FAIR TRIAL.

4. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO MOVE FOR A MISTRIAL WHEN ONE OF THE JURORS WAS FOUND SLEEPING AND THUS VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS, EQUAL PROTECTION, EFFECTIVE ASSISTANCE OF COUNSEL AND THE RIGHT TO A FULL AND FUNDAMENTALLY FAIR TRIAL.

5. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT TO THE PROSECUTOR'S IMPROPER STATEMENTS DURING CLOSING ARGUMENT AND VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS, EQUAL PROTECTION, EFFECTIVE ASSISTANCE OF COUNSEL AND THE RIGHT TO A FULL AND FUNDAMENTALLY FAIR TRIAL.

6. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO OBTAIN A BLOOD SPLATTER EXPERT AND A STABBING EXPERT AND VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS, EQUAL PROTECTION, EFFECTIVE ASSISTANCE OF COUNSEL AND THE RIGHT TO A FULL AND FUNDAMENTALLY FAIR TRIAL.

7. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO PROPERLY INVESTIGATE AND PREPARE FOR TRIAL AND

VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS, EQUAL PROTECTION, EFFECTIVE ASSISTANCE OF COUNSEL AND THE RIGHT TO A FULL AND FUNDAMENTALLY FAIR TRIAL.

8. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT TO AND/OR MAKE SURE THE TRIAL COURT DID NOT FILE NEW COMMITMENT PAPERS BUT RECOMMITMENT PAPERS AND MAKE SURE DEFENDANT WAS SENT BACK TO HIS PERMANENT INSTITUTION WHERE HE WAS PRIOR TO GOING BACK TO THE COUNTY AND VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS, EQUAL PROTECTION, AND EFFECTIVE ASSISTANCE OF COUNSEL.

On May 5, 2005, the state trial court denied in part the rule 3.850 motion for postconviction relief, and ordered the State to show cause why Hoag was not entitled to an evidentiary hearing on grounds 3, 6, and 7. (Exh. 013).  On May 31, 2005, the State filed its response. (Exh. 014). On July 20, 2005, the state trial court denied in part and dismissed in part, Hoag's Rule 3.850 motion. (Exh. 015). On August 16, 2005, Hoag filed a notice of appeal of the denial of postconviction relief. (Exh. 016). Hoag filed an initial brief on September 12, 2005. (Exh. 017). The State filed its summary letter on September 22, 2005. (Exh. 018). On February 10, 2006, the state district court of appeal per curiam affirmed the denial of postconviction relief. *Hoag v. State*, 928 So. 2d 346 (Fla. 2d DCA 2006)(table). (Exh. 019). The mandate issued May 16, 2006. (Exh. 020).

Hoag timely filed a federal petition for writ of habeas corpus on September 1, 2006. He is proceeding on his court-ordered amended petition for writ of habeas corpus. (Doc. No. 11).

STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

"The failure of appellate counsel to brief an issue which is without merit is not a deficient performance which falls measurably outside the range of professionally acceptable performance." *Suarez v. Dugger*, 527 So. 2d 190 (Fla. 1988); *see Kokal   v.*

*Dugger*, 718 So. 2d 138 (Fla. 1998)("Appellate counsel cannot be faulted for failing to raise a nonmeritorious claim.").

DISCUSSION

Ground One

DID THE TRIAL COURT AND APPELLATE COURT ERR BY ALLOWING DR. PALMA'S HEARSAY TESTIMONY REGARDING THE MANNER AND CAUSE OF PATRICIA HOAG'S DEATH BASED EXCLUSIVELY UPON HIS REVIEW OF DR. WOOD'S AUTOPSY REPORT, PHOTOGRAPHS AND DEPOSITION WHEN DR. WOOD WAS AVAILABLE TO TESTIFY.

Hoag contends that the state trial court and state district court of appeal erred in allowing Dr. Palma's testimony. Hoag's claim has no merit because the issue is a state evidentiary question.

Federal courts do not sit to review state evidentiary questions. *Osborne v. Wainwright*, 720 F. 2d 1237, 1238 (11th Cir. 1983). State evidentiary rulings do not present a ground for habeas relief unless they are unconstitutional and are crucial, critical or highly significant. *Williams v. Kemp*, 846 F. 2d 1276, 1281 (11th Cir. 1988). Relief has only been granted when there has been a violation of the accused's constitutional rights. *Knight v. Dugger*, 863 F. 2d 705, 725 (11th Cir. 1988).  Such is not the case here.

The determination of a witness's qualifications to express an expert opinion is within the discretion of the state trial court. The state trial judge's decision will not be reversed absent a clear showing of error. *Geralds v. State*, 674 So. 2d 96, 100 (Fla. 1996). Dr. Palma was permitted to express an opinion on matters within his area of expertise when the opinion was in response to facts disclosed to him at or before trial. *Geralds*, 674 So. 2d at 100; *Capehart v. State*, 583 So. 2d 1009 (Fla. 1991). *Gerald* and *Capehart* are directly

on point with the instant case since the expert witnesses in those cases testified regarding the cause of death even though the expert witnesses did not perform the respective autopsies. Like the expert witnesses in *Geralds* and *Capehart*, Dr. Palma reviewed all previous reports, photographs and paperwork as well as Dr. Wood's deposition prior to testifying.

The state trial court did not err in allowing Dr. Palma to testify. Pursuant to *Gerald and Capehart*, if there was error, the error is harmless.

Ground one has no merit and does not warrant habeas corpus relief.

Ground Two

BRADY VIOLATION, HOAG'S CONVICTION WAS OBTAINED UNCONSTITUTIONALLY BY THE FAILURE OF THE PROSECUTOR TO DISCLOSE EXCULPATORY AND/OR EVIDENCE THAT COULD HAVE BEEN USED FOR IMPEACHMENT, i.e., THE F.D.L.E. DNA TEST RESULTS AND THUS VIOLATED HOAG'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS, EQUAL PROTECTION, AND THE RIGHT TO A FUNDAMENTALLY FAIR TRIAL.

Hoag argues he was denied due process and equal protection by the trial court's failure to consider his *Brady v. Maryland*, 373 U.S. 83 (1963) claim.  Hoag did not raise this *Brady* claim on direct appeal and the claim is procedurally barred because Hoag has not shown cause and prejudice to overcome the procedural bar. Furthermore, the claim has no merit. Defense counsel used the lack of DNA testing to Hoag's advantage in arguing at trial that the State had not met its burden of proof. The defense strategy was to point out the deficiencies of the State's investigation and to argue specifically that the State did not fulfill its obligation to conduct the investigation as it should have. (See Exh. 014 at p. 5, and excerpt of Jury Trial Transcript, October 8 to 11, 2002 at pp. 777-778).

Ground two is procedurally barred, has no merit, and does not warrant habeas corpus relief.

## Ground Three

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE AND THUS VIOLATED HOAG'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS, EQUAL PROTECTION, EFFECTIVE ASSISTANCE OF COUNSEL AND THE RIGHT TO A FULL AND FUNDAMENTALLY FAIR TRIAL.

Hoag raises six issues of ineffective assistance of trial counsel. The state trial court's rejection of Hoag's issues in ground three, as discussed below, was neither contrary to, nor an unreasonable application of, Supreme Court precedent.

## Issue One

Hoag asserts that defense counsel was ineffective for failing to object to the redacted version of the 911 tape going to the jury room during deliberations. The state trial court properly summarily denied this claim, as follows:

> The record indicates that the Court played the tape for the jury (the contents having been transcribed by the court reporter) and stopped the recording at that point at which Defendant's interaction with the 911 dispatcher ended. The Court instructed the State to prepare an unedited version of the tape of the portion they heard at trial for the jury's consideration during deliberations. [ ] Defendant only speculates that the 911 tape was not prepared in accordance with the Court's instruction and could have been altered and, that his attorney should have it replayed before the Court and again entered it into evidence. A 3.850 motion is not a vehicle whereby to conduct a fishing expedition into whether a claim for relief exists; instead to state a facially sufficient claim, a defendant must state specific facts that support the claim. *Cf. Davis v. State*, 736 So. 2d 1156 (Fla. 1999). Defendant makes no such allegations that any specific person altered the tape, how the tape was altered, and how the alleged alteration prejudiced him. This claim is denied.

(Exh. 013).  The state trial court properly denied this claim, and for the above reasons, issue one has no merit.

Issue Two

Hoag next asserts that trial counsel was ineffective for failing to call John Hoag and Cathy Southerland to testify at trial to refute Rhoads' testimony that Hoag stabbed Rhoads in the upstairs shower. Hoag alleges that John Hoag and Cathy Southerland would have testified that they were at the house on the night of the crime, that Rhoads started an argument with Patricia Hoag, and that Petitioner Hoag, Rhoads, and Patricia Hoag were downstairs when John Hoag and Cathy Southerland left the residence.

Counsel was not ineffective in failing to call John Hoag and Cathy Southerland to testify because, although their expected testimony might contradict Rhoads' testimony, that Petitioner Hoag stabbed him in the upstairs shower, their testimony would also have contradicted Petitioner Hoag's and Valerie Loughery's testimony that only Petitioner Hoag, Valerie Loughery, Patricia Hoag, and later, Marvin Rhoads were present at the house on the night of the crime.

Neither Petitioner Hoag nor Loughery mentioned John Hoag and Cathy Southerland's presence at the house on the night of the crime either in their statements to the police or in their testimony at trial. Hoag said in his statements to police and testified at trial that the only people in the house the night of the crime were Hoag's mother, Patricia Hoag, Petitioner Hoag himself, Loughery, and later, Marvin Rhoads. Loughery testified consistent with Petitioner Hoag and Rhoads that the only people in the house were Petitioner Hoag, Patricia Hoag, and later, Rhoads.  Rhoads testified that when he arrived

at the house that night, the only people there were Patricia Hoag, Petitioner Hoag, and Loughery. The trial court found that this claim had no merit, stating:

> Had counsel called Mr. John Hoag and Cathy Southerland to testify as Defendant states in his Motion, Defendant's testimony and statements to police and his girlfriend's testimony would have been contradicted by their own defense witnesses and their credibility might have been severely impeached. As stated elsewhere in the State's Response, Defendant presented a defense based on voluntary intoxication, self-defense, and accidental shooting. . . . The record indicates that the sole evidence presented to support these defenses, as to the voluntary intoxication defense came from Defendant and his girlfriend's testimony that Defendant had been drinking heavily the night of the incidents, and as to the others, Defendant's testimony that he remembered Mr. Rhoads and his mother fighting that night. As the Court finds the State's argument persuasive, this claim is denied.

(Exh. 015).  The state trial court properly denied this claim, and for the above reasons, issue two has no merit.

Issue Three

Hoag next argues that counsel was ineffective for failing to obtain blood splatter and stabbing experts to testify at trial. Hoag alleges that the testimony of blood splatter and stabbing experts would have refuted Rhoads' testimony regarding the location of where the stabbings took place and otherwise show that Hoag did not stab his mother.

The state trial court adopted the State's response to this claim and found that the claim had no merit:

> In its response, the State argues first that counsel was not ineffective in not hiring these experts because counsel had to employ a defense that was consistent with Defendant's [Hoag's] statements. The State argues that counsel cannot be found ineffective for failing to investigate a particular defense when it conflicted with an otherwise viable defense. The reasonableness of counsel's actions in [sic] largely determined by Defendant's own statements or actions. *See Rivera v. State*, 717 So. 2d 477 (Fla. 1998).  Nowhere in his motion does Defendant state that he asked counsel to hire such experts.  The State also points out that Defendant could

-11-

not remember what happened and thus could not deny doing the stabbings. *See State's Exhibit 1, p. 672.* Counsel was obligated to pursue a defense compatible with the evidence that included Defendant's own incriminating statements indicating that he did stab both the victims. *White v. State*, 4559 So. 2d 1097 (Fla. 1990). The record indicates that he told the police dispatcher and investigators, as well as making various other remarks overheard by police personnel, that indicated Defendant's guilt to the offense. *See State's Exhibit 1, pp. 185, 220-221, 299-300, 317-319 and 439-440.* The State argues that based on the overwhelming number of statements made by Defendant, some of them uttered when he believed himself to be alone, to employ a defense that Defendant did not stab his mother and Mr. Rhoads would be inconsistent with the other evidence. Consequently, the defense employed at trial was that Defendant did not deliberately stab the victim and Rhoads, but only by accident or to defend his mother. *See State's Exhibit 1, pp. 178 and 783-788.*

The State next argues Defendant has now [sic] shown that he was prejudiced by counsel not investigating the how, when, and where the victim was stabbed. The State points out that Defendant did not deny that he stabbed the two victims and that, therefore, his claim that there is a reasonable likelihood that the jury would have found him not guilty is inaccurate. Defendant does not name any experts that he may have spoken with or how he obtained these opinions that he attributes to experts. Defendant does not explain the basis for the experts' alleged conclusions regarding how the stabbings took place. He specifies no blood splatter pattern from the bedroom to support his claim where Mr. Rhoades [sic] was stabbed. The police theorized, consistent with Mr. Rhoads' testimony that the stabbing took place in the bathroom because of the amount of blood outside the shower area where the shower flow could not reach. Defendant states that experts would testify that he could not have stabbed the victim because the perpetrator was left-handed. Only three persons, the victim, Defendant, and Mr. Rhoads, were in the house that night. Defendant alludes that Mr. Rhoads killed the victim and then convinced Defendant (because he was suggestible due to his drunken state) that he did it. Defendant does not state that Mr. Rhodes, [sic] the only other person alive that night, was left-handed. Nor does the alleged expert's conclusion explain how Mr. Rhoads obtained his own stab would since allegedly the expert would testify that Defendant's mother was stabbed unexpectedly from behind. As Defendant has not shown that even if the experts testified as he suggested, that there is a reasonable probability that the outcome at trial would have been different, this claim is denied.

(Exh. 015 at pp. 3-4).  The state trial court properly denied this claim, and for the above reasons, issue three has no merit.

Issue Four

Hoag contends that defense counsel failed to prepare properly for trial. The only new claim in issue four is Hoag's contention that counsel should have had DNA tests run on blood found at the crime scene to map out where and whose blood was found. The state trial court properly found this claim to be without merit because the claim was vague and non-specific.  The state trial court said:

> To state a prima facie case of ineffective assistance of counsel, a defendant must allege specific facts, and not mere speculative conclusions. *Nolan v. State*, 794 So. 2d 639, 641 (Fla. 2d DCA 2001). Defendant does not suggest that had counsel had the tests performed, and mapped out the areas where each individual's blood was found, what the findings would have been and how the location of the blood would have affected the trial's outcome or counsel's trial strategy. This claim is dismissed.

(Exhs. 013 and 015).  The state trial court properly denied this claim, and for the above reasons, issue four has no merit.

Issue Five

Hoag contends that counsel was ineffective for failing to object to portions of the State's closing argument.  Specifically, Hoag alleges that counsel should have objected when the State argued that the red dot on the bathroom ceiling was blood, when the State commented on the credibility of witnesses, and when the State commented on Defendant's testimony regarding how much beer he consumed before the homicide.  The state trial court made the following findings:

> Defendant has failed to demonstrate the deficiency prong of *the Strickland* test. As to his first claim, the blood on the bathroom ceiling,

-13-

Marvin Rhodes testified, that while he was taking a shower, Defendant stabbed him over his right back shoulder. He further testified that he was bleeding at the time. Officer Corio in his testimony described the bathroom as "bloody" showing pictures depicting the blood on the shower curtain, top of the tub, and floor. Officer Hubbard testified to seeing blood on the ceiling and pictures introduced as evidence illustrated the spots he saw on the ceiling. Based on this testimony, the prosecutor's conclusion was a reasonable inference from the evidence that the red dot was blood. *See Miller v. State*, 712 So. 2d 451 (Fla. 2d DCA 1998)(citing *Bertolotti v. State*, 476 So. 2d 130 (Fla. 1985)).

Next, Defendant states that the State improperly commented on the credibility of witnesses. Defendant does not name the witness or state those particular comments that the State made that were improper. As to the State's comments on Defendant's level of intoxication, a review of the trial transcript indicates that the aforementioned comments appear on pages 795-797. The prosecutor argued that Defendant could not have consumed that amount of beer that he testified to and become intoxicated as he claimed based on the evidence. The record indicates that each witness testified consistent with the State's argument. Dr. Palma testified that in the average person one can of beer can raise the alcohol level in one's blood to 0.03 grams per DL. Defendant testified to drinking thirty-six beers in a nine-hour period. Defendant's girlfriend testified that Defendant played UNO. The Court concludes that the State's argument was proper since they were based on the evidence presented at trial and the reasonable inferences from the evidence. This claim is denied.

(Exh. 013). The state trial court properly denied this claim, and for the above reasons, issue five has not merit.

### Issue Six

Hoag asserts that trial counsel was ineffective for failing to move for a mistrial when one of jurors was found sleeping. The state trial court found:

Defendant has not demonstrated either prong of the *Strickland* test. The record indicates that the State alerted the Court that Mr. Mitchell, the second alternate juror, appeared to be sleeping during the coroner's testimony, that the bailiff addressed it with him, and the Court promised to monitor him throughout the rest of the trial. The record also indicates that the Court excused Mr. Mitchell prior to jury deliberations and that he did not take part in the verdict. It is noted that it cannot be extrapolated that from the

-14-

possibility that this one juror was sleeping that other jurors were also sleeping or not paying attention to the evidence presented just because they had questions of the Court regarding the case. The claim is denied.

(Exh. 013).  The state trial court properly denied this claim, and for the above reasons, issue six has no merit.

Ground three, in its entirety, does not warrant habeas corpus relief.

## Ground Four

APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO RAISE SIGNIFICANT AND OBVIOUS ISSUE(S) WHICH ARE APPARENT ON THE FACE OF THE RECORD, AND THUS VIOLATED HOAG'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS, EQUAL PROTECTION AND THE RIGHT TO A FULL AND FUNDAMENTALLY FAIR APPELLATE REVIEW.

Hoag raises five issues of ineffective assistance of appellate counsel. The state court's rejection of Hoag's issues in ground four, as discussed below, was neither contrary to, nor an unreasonable application of, Supreme Court precedent. It would have been futile for appellate counsel to argue reversible error based on the issues raised by Hoag since his claims were not supported by the evidence.

## Issue One

Hoag contends that appellate counsel was ineffective for failing to raise the issue that the state trial court erred in allowing St. Petersburg Police Officer Collins to testify as an expert with respect to the extent of Marvin Rhoads' injuries.  Hoag has failed to meet either *Strickland* prong in issue one.

First, Officer Collins' testimony was proper, so Hoag cannot show that appellate counsel's *performance* was deficient. An officer can state an opinion based on his training and experience. Officer Collins testified that he previously had been involved in six or seven

-15-

cases dealing with stab wounds and had completed a "death serious injury investigation" 40-hour training course. The course teaches how to recognize different wounds which include stab wounds. (Exh. 021, V. 3, T. 355-356).

Second, Hoag cannot show that he was prejudiced by the admission of Officer Collins' testimony regarding the extent of Rhoads' injuries. At trial, sufficient evidence was presented to show that Hoag stabbed Marvin Rhoads. Rhoads testified that Hoag stabbed him in the back with a large knife and Rhoads attempted to show where his injuries were located. Blood was found in the bathroom and shower where Rhoads was stabbed. Hoag also admitted to the stabbing in his call to 911. (Exh. 21; V. 3, T. 299-303; V. 4, T. 413-415, 438-440, 508, 515-526). Issue one has no merit.

Issue Two

Hoag asserts that his appellate counsel was ineffective for failing to raise the claim that the trial court erred in disallowing testimony regarding Valerie Loughery's knowledge of Rhoads' abusing the victim, Patricia Hoag. This testimony was properly excluded because it was offered to show Rhoads's prior bad acts and was not offered to prove Petitioner Hoag's apprehension about Rhoads' conduct toward Patricia Hoag or to show a defensive overt act by Patricia Hoag at or about the time of the stabbings. Valerie Loughery's testimony regarding bruises she saw on Patricia Hoag weeks or months prior to the time of the crime failed to show that Rhoads' alleged violent acts caused Hoag to stab Rhoads. *See Holland v. State*, 916 So. 2d 750 (Fla. 2005), *cert. denied*, 126 S.Ct. 1790 (2006). Moreover, Valerie Loughery's testimony actually shows that Hoag was unaware of the bruises on his mother until Valerie Loughery told him about them. Thus,

Hoag has failed to show he had actual knowledge of the specific acts of violence allegedly previously committed by Rhoads toward Patricia Hoag.

Hoag's testimony at trial further reveals no overt act toward Patricia Hoag was committed by Rhoads at the time of the stabbings. Rhoads was taking a shower when Hoag attacked him, and  Hoag testified that he did not remember stabbing Rhoads or his mother.  Issue two has no merit.

### Issue Three

Hoag also asserts that his appellate counsel was ineffective for failing to raise the claim that the state trial court erred in denying his motion for judgment of acquittal because the jury asked six questions during its deliberation. The fact that the jurors asked six questions is irrelevant to the state trial court's denial of his motion for judgment of acquittal. The state trial court found that there was sufficient evidence to send the case to the jury. Issue three has no merit.

### Issue Four

Hoag asserts that his appellate counsel was ineffective for failing to raise on appeal the "fact" that the state trial court erred by showing bias or prejudice toward Hoag at trial. A review of the record, and especially a review of Hoag's "Motion for New Trial or, Alternatively, for Arrest of Judgment, or, Alternatively, for Modification of Sentence, or, Alternatively, for Correction of Sentence," demonstrates that the state trial court did not show bias or prejudice in front of the jury. At the hearing on the motion for new trial, the following  occurred:

> CHARLES LYKES [DEFENSE COUNSEL]:  Anyway, there is one
> thing in here that I must raise at this time, Your Honor, and I -- Your Honor

made the comment at the time that Mr. Hoag was being sentenced that you know Mr. Hoag ought to have noticed the gestures that you gave him when he was talking about the drinking the 30 beers, and if you were gesturing to Mr. Hoag and the jury is seated over there, I mean, you know the jury is instructed that anything you said or done [sic] they're to disregard, but nevertheless, Your Honor, you're the boss of this trial.  You're the man up there wearing the robe and you're the authority here and --

THE COURT: Wasn't there a proffer of some of his testimony?

MR. ELLIS [PROSECUTOR]: Yes, Judge, during the proffer of the testimony, that's when you looked at the defendant and asked him to clarify whether it was 30, and during that. [sic]  You did not make any such gestures in front of the jury.  The jury wasn't present.

MR. LYKES: I wasn't aware of which it was.

THE COURT: Yeah.

MR. LYKES:  He [Petitioner Hoag] testified at both times.

THE COURT: I know.

MR. LYKES:  And if I didn't bring it up here, I --

THE COURT: I understand.  My recollection of the look that I might have given him, it might have been one of these peering down over my glasses as sometimes I am prone to do, but my recollection is that that was done at the time of the proffer while the jury was absent from the courtroom.  And that while he testified no such gestures or looks or anything else were given to him in the presence of the jury. That's my recollection of the situation.

MR. ELLIS: Mine as well, Judge.

MR. LYKES:  Your Honor, I accept that completely.

(Exh. 021; V. 1, R. 181-182).

Because Hoag has failed to show that the state trial court's actions  prejudiced him

in any way, he cannot meet the *Strickland* standard for ineffective assistance of appellate

counsel.  Appellate counsel was not ineffective for failing to raise a non-meritorious claim. Issue four has not merit.

Issue Five

Hoag asserts that appellate counsel was ineffective for failing to raise the issue regarding the state trial court's erroneously denying his post-trial motion for a new trial without addressing the merits of the motion. This claim is simply not true.  The state trial court held a hearing on Hoag's "Motion for New Trial or, Alternatively, for Arrest of Judgment, or, Alternatively, for Modification of Sentence, or, Alternatively, for Correction of Sentence"  on November 15, 2002.  The state trial court judge stated, at the beginning of the hearing, that he had previously received a copy of the motion and had reviewed it "as recently as just a few minutes ago."

At that hearing, the state trial court judge addressed the following claims.

1. The jury returned verdicts of guilt to the lesser included offense of second-degree murder and attempted second degree murder. Approximately halfway through their four hours of deliberations the jury presented this Honorable Court with six questions, five of which were requests for what amounts to additional information and one of which was an inappropriate procedural inquiry. . .

2. The Defendant should receive a new trial.  The circumstances described in paragraph one above are re-alleged.  Additionally, the trial court permitted the cause of death to be established by hearsay testimony over the objections of the Defendant.  The trial court additionally permitted the nature of the injuries to the victim of the attempted homicide to the [sic] established by a police officer with minimal medical training . . . Finally, although the undersigned attorney did not personally observe this during trial because he was observing the witnesses. . . , during the testimony of the Defendant regarding his consumption of alcohol, the Honorable Court had given the Defendant a look of disapproval. . . .

3. The Honorable Trial Court proceeded immediately to sentencing over the objection of the Defendant immediately upon receipt of the verdicts. . .

4. The written sentence indicates credit of 694 days towards his sentence. In fact, the Defendant has been continuously incarcerated since March 21, 1996.  Accordingly, as of the date of the rendition of the sentence on October 11, 2002, the Defendant had been incarcerated pending trial on this offense for 2395 days . . .

(Exh. 021, R 99-102)  The state trial court allowed argument on all of the claims at the hearing, and the state trial court orally denied the motion after hearing the argument.  (See Exh. 021, SUPP.V. 1, R 173-194).

Because the state trial court did not deny Hoag's motion for new trial without addressing the merits of the motion, appellate counsel cannot be ineffective for failing to raise issue five on appeal. Issue five has no merit.

Ground four, in its entirety, does not warrant habeas corpus relief.

**Accordingly, the Court orders**:

That Hoag's petition is denied, with prejudice.  The Clerk is directed to enter judgment against Hoag and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Hoag is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Hoag "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the

issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Hoag has not made the requisite showing in these circumstances.

Finally, because Hoag is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on February 11, 2008.

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record
James C. Hoag

-21-